IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COMPAGNIE DES BAUXITES DE GUINEE,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**THREE RIVERS INSURANCE COMPANY and UNION GUINEENNE D'ASSURANCES,** )<br>)<br>)<br>Defendants. ) | **2:04cv393**<br>**Electronic Filing** |

## MEMORANDUM ORDER

AND NOW, this 26th day of March, 2008, upon due consideration of plaintiff's renewed motion for judgement as a matter of law and the parties' submissions in conjunction therewith, IT IS ORDERED that the motion [301] be, and the same hereby is, denied.

In reviewing a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, the court must determine whether there is sufficient evidence upon which a reasonable jury could properly have reached its verdict. In other words, "a Rule 50 motion should be granted only if [the] evidence is not sufficient for a jury reasonably to find liability." Goodman v. Pennsylvania Turnpike Commission, 293 F.3d 655, 665 (3d Cir.2002) (citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir.1993)).

In resolving a Rule 50 motion the reviewing court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Id. (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)); see also Lighting Lube, 4 F.3d at 1166 ("Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.") (citing Wittekamp v. Gulf & Western, Inc., 991 F.2d 1137, 1141 (3d Cir.1993)). It likewise cannot substitute its assessment of the evidence for that of the trier of fact. Garrison v. Mollers North America, Inc., 820 F. Supp. 814, 820 (D. Del. 1993).

Judgement as a matter of law is to be granted sparingly. Goodman, 293 F.3d at 665. Nevertheless, "more than a scintilla of evidence is needed to sustain a verdict." CGB Occupational Therapy, Inc. V. RHA Health Serves, Inc., 357 F.3d 375, 383 (3d Cir. 2004). "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003) (quoting Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)). After reviewing the record in accordance with the standard referenced above, "[a] judgment as a matter of law must be sustained if the record is critically deficient of the minimum quantum of evidence from which the jury might reasonably afford relief." Gomez, 71 F.3d at 1083 (citing Smollett v. Skayting Dev. Corp., 793 F.2d 547, 548 (3d Cir.1986)).

Plaintiff argues the record did not contain sufficient evidence to support the jury's determination in phase I of the trial. Specifically, plaintiff asserts the record did not contain a legally sufficient evidentiary basis to support the jury's finding that an attempted repair of Stacker/Reclaimer No. 2 after its collapse on June 25, 2001, would have restored it to the same condition and made it substantially as good and serviceable as it was before the accident. The record purportedly supported only the determination that some level of repair was "possible" and did not contain essential evidence on the issues of capabilities, reliability, safety, and remaining useful life which was needed to support the jury's determination. We disagree.

Plaintiff's position misconstrues the standard of proof defendant was required to meet in carrying its burden in phase I and ignores much of the content and persuasive force of the evidence submitted to the jury during that phase. Plaintiff's position essentially seeks to impose upon defendants a duty to prove with certainty that a repair would have been successful in every conceivable aspect. But the policy did not place upon defendants the attendant responsibilities that would flow from the exercise of an "option to repair" because the policy did not contain any such option. See Memorandum on the Scope of Coverage (Doc. No. 231) at 11 n.1 and cases cited/referenced in conjunction therewith; Global All Risk Policy (Doc. No. 129-2) at Section 12(B)(2); 12 Couch on Insurance 3d §§ 176:1-4. Plaintiff, as a sophisticated party on equal

footing with the defendants, could have sought to obtain a policy that placed on defendants the duty to repair production machinery and equipment in the event defendants insisted on using that measure for valuating a loss. Plaintiff instead purchased a policy that gave it the right to control decisions about the disposition of damaged and destroyed production machinery and equipment, subject to the defendants' ability to abate a portion of any claimed loss by proving the alternative measure of valuation serves as an appropriate limitation on their liability under the circumstances. Id. at 6 (acknowledging the undisputed principle that defendants did not reserve the right to control the election between alternative measure of valuation) and 17 ("the parties intended the cost of repair or replace new to operate as limiting alternatives to be employed in a manner consistent with their well-understood meanings.").

Furthermore, regardless of whether defendants would be seeking to prove that replacement new was an appropriate limitation on the cost of repair or vis-a-versa, the defendants' burden is to prove the applicable limitation. See id. at 19 (" Because the instant policy likewise does not expressly condition plaintiff's recovery of replacement costs on establishing the inability to repair the property, and it is defendants who seek to diminish their liability through application of the potentially subordinate provision of repair, defendants are properly charged with the burden of proof on such a substantive defense."). And it is beyond question that proof by a preponderance of the evidence is the generally accepted standard for proving factual matters in a civil case, subject only to a few exceptions that are not applicable under the circumstances. See Burch v. Reading Co., 240 F.2d 574, 578 (3d Cir. 1957). ("The classical statement of the burden of proof in an ordinary civil case such as this is that the facts must be proved by a 'preponderance of the evidence'."). Under this standard defendants were merely required to prove by a preponderance of the evidence that an attempted repair of Stacker/Reclaimer No.2 after its collapse on June 25, 2001, would have restored it to the same condition and made it substantially as good and serviceable as it was before the accident, not that a repair actually would have assured the machine's capabilities, reliability, safety and remaining useful life beyond question.

Moreover, the record contained much more than the minimum quantum of evidence sufficient to support the jury's determination on the issue of repair. Notwithstanding plaintiff's arguments to the contrary, the evidence supporting the jury's factual finding that Stacker/Reclaimer No. 2 could have been successfully repaired within the meaning of that term as used in the Global All Risk Policy was abundant and had significant persuasive force. First, plaintiff's own post-accident mining equipment consultants were requested to inspect the machine and prepare report on measures that would be needed to restore the machine "to a reliable operating condition." Two of the three indicated that the machine could be returned to such a condition. Sveldala engineer Robert Wells provided a repair estimate for returning the machine "to reliable operating condition," which meant it would be restored back to its pre-accident condition, and upgraded to include additional safety devises which Svedala was recommending with that option. It was his assessment that Svedala could have rebuilt Stacker/Reclaimer No. 2 to "reliable operating condition." Peter Walker, an engineer with experience in bulk handling operations, site engineering and construction management experience echoed the same assessments. And during the dismantling of the machine he, and thus Svedala, did not discover any greater damage than was anticipated in preparing the rebuild estimates.

Krupp, the company plaintiff hired to inspect Stacker/Reclaimer No. 2 before the accident, provided three proposals to plaintiff: one to repair it with "renewal of components severely damaged;" one to repair it with renewal of the superstructure and new design; and one to replace it with a new machine. Overviews of the anticipated measures necessary for each proposal were provided. Repair with replacement of the superstructure, which was Krupp's recommended proposal, contemplated a machine with more capacity and enhanced safety features. It also was presented the least risk in safety and down time during the dismantling process. Plaintiff ultimately hired Krupp to follow through on the third proposal and supply a completely new machine.

Additional evidence supporting the proposition that the machine could be repaired to its

-4-

pre-loss condition was provided by defense witnesses. Phil Staples, an engineer hired by defendants to inspect the machine after its collapse and prepare a budget cost estimate on restoring it to its pre-accident condition if it could be done, testified that the machine could be repaired to its pre-loss condition. He preformed an on site inspection and thereafter assembled a cost model estimate for repairing the machine to a normal operating standard, which would have restored any damaged parts to at least their its pre-loss condition, including the replacement of damaged parts that were obsolete and incorporating additional safety features. He noted a number of features where, given the age and/or the nature of the item and its function, he adopted a complete replacement philosophy. He accounted for new safety features that had become available and would be needed. He had experience in assessing the repairs of bulk handling equipment and had experience with assessing the damage to and preparing repair cost proposals for various stacker/reclaimers. See Order on Plaintiff's Motion in Limine No. 8 (Doc. No. 261) at 2 and underlying material submitted in opposition to the motion.

The jury also heard the testimony of engineer Ryan Sharp. He read reviewed in detail each of the repair proposals created after the accident and formed his own independent opinion as to whether Stacker/Reclaimer No. 2 could be repaired to its pre-accident operating condition. It was his opinion to a reasonable degree of engineering certainty that the machine could be restored to the same condition and made substantially as good and as serviceable as it was before the accident, and in a number of instances even better and/or improved with new parts, resulting in a better machine. It would have been restored to the same, if not an improved, level of functional usefulness, productivity, life expectancy, and reliability. Improvement would be accomplished in many of these areas as well as the machine's safety because of completely or substantially replaced structural, mechanical, and electrical components and new cabling.

Each of the above areas of testimony in and of itself would supply the minimum quantum of evidence needed to support the jury's verdict in Phase I. Krupp and Svedala are industry leaders hand picked by plaintiff to assess whether the machine could be restored to a reliable operating condition. Their responses after investigation indicated that it could. Phil

Staples independently reached the same conclusion. Ryan Sharp corroborated the conclusions flowing from each engineering assessment and provided yet another basis upon which to accept the proposition that the machine could have been restored to the same level of functional usefulness, productivity, and reliability, with likely levels of added safety, lower maintenance, and increased life expectancy. When considered in combination, these areas of testimony could be and unquestionably were perceived by the jury to tip the preponderance-of-the-evidence scale heavily in defendants' favor.

Against this backdrop plaintiff's attempt to dissect the evidence on each component of functionality and utility and cry insufficient proof based on the lack of additional inspection and testing is at the very least unavailing. And contrary to this artful effort, the record contained more than ample evidence upon which the jury could have made a finding that was contrary to plaintiff's position. The CBG Blitz Authorization provided a sufficient basis for the jury to reject plaintiff's contention that the machine could have safely and reliably undergone a substantial upgrade in its existing condition before the accident. Ryan Sharp and Krupp engineers rendered the same or very similar assessments. Furthermore, Krupp's repair Alternative 2 included a significant increase in production capacity. And the testifying engineers all acknowledged that a repaired machine would likely have resulted in improved levels of reliability, safety, and life expectancy - with less required maintenance.

In short, the record contained more than ample evidence to support the jury's finding of fact that Stacker/Reclaimer No. 2 could have been restored to the same condition and made substantially as good and serviceable as it was before the accident. In light of these circumstances, this court is without justification to grant the relief requested.

                                               s/ David Stewart Cercone
                                               David Stewart Cercone,
                                               United States District Judge

cc:       Robert W. Doty, Esquire

Andrew M. Roman, Esquire
Larry K. Elliott, Esquire
David F. Russey, Esquire
Cohen & Grigsby, P.C.
11 Stanwix Street, 15th Floor
Pittsburgh, PA 15222

Paul K. Geer, Esquire
Tara L. Maczuzak, Esquire
DiBella, Geer, McAllister & Best
312 Boulevard of the Allies
3rd Floor
Pittsburgh, PA 15222

Thomas S. Gozdziak, Esquire
James M. Hoey, Esquire
CLAUSSEN MILLER, P.C.
10 South LaSalle Street
Chicago, IL 60603-1098